UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Douglas E. Reuter, | Civil No. 11-331 (SRN/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Jax Ltd., Inc., | |
| Defendant. | |

Aaron W. Davis and Tye Biasco, Patterson Thuente Christensen Pedersen, P.A., 80 South Eighth Street, Suite 4800, Minneapolis, MN 55402-2100; and Dennis D. Reuter, 3416 Angie Circle, Coeur D'Alene, ID 83815, for Plaintiff.

Robert R. Weinstine and Brent A. Lorentz, Winthrop & Weinstine, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402-4629, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Jax Ltd., Inc.'s motion to dismiss its counterclaims and for entry of judgment (Doc. No. 92), Defendant's motion for Rule 11 sanctions (Doc. No. 70), and Plaintiff Douglas E. Reuter's motion to lift the stay and to modify the scheduling order, and for leave to file an amended complaint (Doc. No. 97). The Court grants Defendant's motion to dismiss its counterclaims, denies its motion for sanctions and denies Plaintiff's motion. In addition, Plaintiff's earlier motion to amend its Complaint (Doc. No. 47), which had been stayed along with further discovery, is denied as moot.

With these dispositions, all claims and motions have been addressed. Accordingly, a final judgment may now be entered.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Reuter and Jax originally entered into a License Agreement (the "Agreement") in June 1981, under which Reuter granted Jax an exclusive license to manufacture, distribute and sell a board-game, then known as Sequence Five. Reuter claimed to be the inventor of the game. That Agreement was amended in January 1992. Over the years, the original game and subsequent variations on it–and Jax's efforts in distributing them–have been very successful. The relationship has generated substantial income for both parties.[1]

The parties have a history of disputes regarding this Agreement and the games it covers. The 1992 amended Agreement was entered, at least in part, to resolve a conflict between the parties regarding distribution of the games through Target and Wal-Mart and to resolve an earlier attempt by Reuter to terminate the Agreement. In 2005, Jax commenced litigation against Reuter in this district in response to Reuter's threat to terminate Jax's license because Jax allegedly breached the Agreement by refusing to sell the game to Wal-Mart. Jax Ltd., Inc. v. Reuter, No. 05-CV-2658 (DWF/SRN), 2005 WL 3272060, *3 (D. Minn. Nov. 28, 2005). The court granted Jax a temporary restraining order prohibiting Reuter, pending the outcome on the merits of Jax's claim for breach of contract, from interfering with Jax's business relationships with its clients, customers, resellers and retailers, and from cancelling or otherwise altering the license.

Reuter filed the present action on February 9, 2011, claiming that Jax breached several terms of the License Agreement and seeking a declaration of its rights under that

---

[1] For a more detailed history of the parties' relationship, see Jax Ltd., Inc. v. Reuter, No. 05-CV-2658 (DWF/SRN), 2005 WL 3272060 (D. Minn. Nov. 28, 2005).

Agreement. (Doc. No. 1.) Reuter's request for relief included a declaration that because Jax had breached the Agreement, "Reuter [had successfully] terminated the [Agreement] by providing written notice of such to Jax in accordance with the terms of the [Agreement]." (Id. at 15.) Moreover, Reuter sought a declaration that he "may proceed with post-termination activity in relation to a contract breach by Jax" and that "the licensor-licensee relation between Reuter and Jax has ended." (Id. at 1.) The Agreement provides that Reuter, upon Jax having failed to cure any default within thirty days of Reuter providing notice of such default, "may terminate [the] Agreement forthwith by so notifying [Jax]." (Doc. No. 1-1 (License Agreement), at 7.)

Jax's Answer included three counterclaims, two seeking declaratory relief and the third seeking disgorgement of royalties paid to Reuter. (Doc. No. 6.)[2] On March 11, 2011, Jax then filed a motion for a temporary restraining order, contending that Reuter's action was intended "to destroy Jax's business" by "circumvent[ing] the judicial process." (Doc. No. 10, at 1-2.) Jax asserted that Reuter prematurely informed several of Jax's customers that he already had terminated the Agreement, thereby jeopardizing the status quo before the Court ruled on whether the Agreement had been terminated. (Id.) On March 18, 2011, this Court granted the motion and issued an Order that essentially paralleled the 2005 Order prohibiting Reuter from interfering with Jax's business relationships pending judicial resolution of the claims. (Doc. No. 21.) Shortly thereafter,

---

[2] The two counterclaims seeking declaratory relief allege that "Reuter breached his contractual obligation[s]" to fully cooperate with Jax in developing the game, and to notify Jax of any potential infringements. (Doc. No. 6, at 22-23.) Jax also claims that Reuter misrepresented his ownership rights to the game. (Id. at 25.)

3

this Court issued a Memorandum Opinion, explaining its decision and reiterating the terms of the preliminary injunction as originally stated in this Court's Order of March 18, 2011 (Doc. No. 27).[3]

In July 2011, Jax moved for summary judgment on both claims of Reuter's Complaint. (Doc. No. 34.)  In addition to responding to that motion, Reuter also moved, on July 14, 2011, to amend his Complaint to add, *inter alia*, a new Defendant, Anjar Co., and two claims for punitive damages. (Doc. No. 42.)  The proposed amended complaint now asserted twenty claims. (Doc. No. 42-1.)  But on July 20, 2011, Reuter amended that motion to withdraw his request for "general punitive damages." (Doc. No. 47.)  The prayer for relief retained, however, a request for "[s]tatutory punitive damages" under Minnesota law. (Doc. No. 47, Ex. A, at 23.)

Shortly after the hearing on Jax's motion for summary judgment, Jax moved for Rule 11 sanctions, contending that Reuter's proposed Amended Complaint lacked any factual or legal basis. (Doc. No. 70.)  Jax also moved to stay any hearing on Reuter's motion to amend, as well as to stay any further discovery pending the outcome of the other motions. (Doc. No. 65.)  Magistrate Judge Steven E. Rau granted that motion. (Doc. Nos. 79 & 80.)  On September 6, 2011, this Court then granted Jax's motion for summary judgment. (Doc. No. 83.)

On September 28, 2011, Reuter filed a motion for summary judgment on all of

---

[3] Following this Court's Order of March 18, 2011, Reuter requested that the Court reconsider its ruling and modify the preliminary injunction. (Doc. No. 23.)  This Court denied the request to modify its existing injunction. (Doc. No. 27.)

Jax's counterclaims. (Doc. No. 86.) Three months later, the Court terminated Reuter's summary judgment motion for failure to file the requisite supporting materials. Jax now moves to voluntarily dismiss its counterclaims without prejudice–as well as for entry of judgment–and for Rule 11 sanctions regarding Reuter's motion to amend the pleadings. Reuter, in turn, moves to lift the stay, to modify the pretrial scheduling order, and for leave to file yet another Amended Complaint.[4]

## II. DISCUSSION

As outlined above, as this action presently stands, there remains only Jax's counterclaims. Jax seeks to voluntarily dismiss those counterclaims, to be followed by entry of judgment, but Reuter seeks to amend his Complaint to add new claims. Contending that Reuter's motion to amend seeks leave "to file a 'kitchen sink' complaint" that is premised on "wholly unsupportable" claims and allegations, Jax also seeks Rule 11 sanctions for its attorneys fees and costs incurred in having to respond to that motion. (Doc. No. 72.)

In seeking to dismiss its counterclaims without prejudice, Jax asserts that it "has no present wish to pursue [them], and should not be forced to continue a fight that it did not start." (Doc. No. 94, at 1.) Moreover, Jax contends that Reuter refused to stipulate to the dismissal because he "has no real interest in ever ending this lawsuit," characterizing Reuter's stated reasons for opposing dismissal–(1) that he has a right to disprove the allegedly defamatory statements of Jax counterclaims, and (2) that he has a right to pursue

---

[4] Although the July 2011 motion to amend (Doc. No. 42) was terminated, the *amended* motion to file that earlier Amended Complaint (Doc. No. 47) remains pending.

"yet another amended complaint following summary judgment on his two original claims"–as "nonsensical."  (Id. at 2.)

In response, Reuter claims Jax is attempting to avoid a ruling against it on the merits and that even if the Court does not permit Reuter's Amended Complaint, Reuter must be allowed to litigate Jax's counterclaims–which Reuter claims amount to "defamation and slander of title"–in order to "avoid third-party attacks to his trademark."  (Doc. No. 107, at 1.)  Reuter further argues that he should be permitted to file an Amended Complaint that adds a new defendant and additional claims.  (Doc. No. 99, at 2.)  Jax opposes the motion, arguing that this Court's Order of September 6, 2011, which granted summary judgment to Jax on Reuter's two original claims, also bars the new claims Reuter now seeks to pursue.  (Doc. No. 112, at 1.)  Jax contends that "Reuter now wants to start over" with "never ending litigation," after "failing to plead every claim of which he was purportedly aware when" he first brought this action, "after failing to take advantage of the time for discovery" available to him, "and after failing to file a Rule 56(d) affidavit in response to Jax's summary judgment motion."  (Id.)  Jax thus claims that "Reuter is attempting to plead around this Court's summary judgment order."  (Id. at 2.)

> **A.     Dismissal of Jax's Counterclaims**

After a plaintiff serves either a responsive pleading to a defendant's counterclaims or a motion for summary judgment, a defendant (absent a stipulation by all parties) may dismiss its counterclaims "only by court order, on terms that the court considers proper."

Fed. R. Civ. P. 41(a), (c); <u>Kwan v. Schlein</u>, 634 F.3d 224, 230-32 (2d Cir. 2011) (affirming dismissal of counterclaims).

The Eighth Circuit has recently reiterated "the considerations to be taken into account by a district court prior to dismissing under Rule 41(a)(2):

> A decision whether to allow a party to voluntarily dismiss a case rests upon the sound discretion of the court. In exercising that discretion, a court should consider factors such as whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants. Likewise, a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum."

<u>Thatcher v. Hanover Ins. Group, Inc.</u>, 659 F.3d 1212, 1213-14 (8th Cir. 2011) (quoting <u>Hamm v. Rhone – Poulenc Rorer Pharm., Inc.</u>, 187 F.3d 941, 950 (8th Cir. 1999) (internal citations omitted)).

The Court first observes that the procedural posture of this action does not implicate many of the factors that might warrant denial of the motion. Here, trial has not yet started, much less finished, and discovery has been stayed since August 18, 2011. Moreover, Jax moved for summary judgment on Reuter's original claims in July 2011. Although Jax's counterclaims had been pending for over three months at that time, Reuter did not then respond by moving for summary judgment on those counterclaims. Rather, Reuter filed his first motion to amend. In fact, Reuter waited until after this Court granted Jax's motion for summary judgment, and after Jax offered to stipulate to a dismissal of its counterclaims, to contend, in its opposition to Jax's motion to dismiss, that those

counterclaims must still be adjudicated.[5]  Granted, a plaintiff facing a defendant's motion for summary judgment is not required to file its own motion for summary judgment on the defendant's counterclaims.  But here, Reuter now contends that those counterclaims must be adjudicated on their merits rather than dismissed without prejudice even though he had not taken advantage of earlier opportunities to dispute those counterclaims.

Reuter disputes Jax's characterization of its counterclaims as "defensive," contending that they are instead "an affirmative attack on Reuter and his" rights.  (Doc. No. 107, at 3.)  He claims that unless those counterclaims are resolved "a third party could make that same claim using the arguments of Jax."  (Id.)  He further contends that unless they are disproved now, "they can be used against him in the future by Jax or a third party."  (Id.)

With respect to Reuter's claim that Jax's counterclaims are not "defensive," it appears that Reuter misunderstands the term in this context.  That the counterclaims might be an affirmative attack on his rights does not preclude them from being "defensive" for purposes of Rule 41.  Rather, counterclaims are "defensive" if they were asserted only in response to a plaintiff's action, such that a defendant has "no intention of pursuing those counterclaims independent of a reversal" of a grant of summary judgment in favor of the defendant on the plaintiff's claims, "or any action by [the plaintiff] to continue to pursue the issues raised in this litigation."  Kwan v. Schlein, 634 F.3d 224,

---

[5]      Reuter filed, although not until September 28, 2011, a motion for summary judgment "as to all counterclaims asserted by" Jax.  (Doc. No. 86.)  However, Reuter failed to timely file any materials in support of that motion.

231 (2d Cir. 2011). Here, Jax asserts that now that this Court granted it summary judgment on all of Reuter's claims, Jax no longer wishes to litigate. This is a satisfactory reason to move for voluntary dismissal. Id. at 232 (noting that "district court was entitled to accept" defendant's representation that the counterclaims were "asserted only in response to [the plaintiff's] lawsuit," such that "[o]nce summary judgment was granted ending [the plaintiff's] lawsuit, [the defendants] had no reason to continue to pursue their claims").

In any event, voluntary dismissal of counterclaims under Rule 41 is not limited to those counterclaims that are strictly defensive or, as Reuter also contends, "directly tied to the plaintiff's claims." (Doc. No. 107, at 8.) On a motion for voluntary dismissal, the party opposing dismissal "must be able to demonstrate some plain legal prejudice flowing to them as a result of the dismissal." Hoffmann v. Alside, Inc., 596 F.2d 822, 823 (8th Cir. 1979) (explaining that what is required is more than a showing that the movant "will gain a tactical advantage by his action"). In this context, "'prejudice'" means "something other than the necessity that [Reuter] might face of defending another action." Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984) (explaining that "[t]hat kind of disadvantage can be taken care of by a condition that [the movant] pay to [the opposing party] its costs and expenses incurred in the first action"). "Courts generally will grant dismissals where the only prejudice the [non-movant] will suffer is that resulting from a subsequent lawsuit." Paulucci v. City of Duluth, 826 F.2d 780, 782 (8th Cir. 1987).

Reuter's fear of Jax re-asserting the present counterclaims later does not amount to

legal prejudice.  Reuter has no right to obtain their resolution now.  The fact that Rule 41 permits a party to dismiss its claims or counterclaims *without prejudice* necessarily contemplates the possibility that they could be reasserted later.  Nor is Reuter's fear of a third party later asserting claims based on Jax's present counterclaims a persuasive reason to deny Jax's motion.  The allegations of Jax's counterclaims are simply that–allegations.  A third party, or even Jax itself for that matter, may obtain no preclusive effect from mere allegations, particularly those of claims voluntarily dismissed by the party that had asserted them.  The "case or controversy" requirement of Article III and the ripeness doctrine preclude federal courts from presently adjudicating claims that only might be brought later.  Thus, Reuter cannot compel any judicial resolution of Jax's counterclaims simply to preclude the possibility that Jax or a third party might assert similar claims down the road.

This leaves Reuter's assertion that Jax's counterclaims constitute defamation and slander.  But as Reuter himself recognizes, Jax's allegations regarding Reuter are not actionable.  (Doc. No. 107, at 11 ("Such slanderous statements are absolutely privileged in the context of Jax's judicial counterclaims.").)  The Court first notes that Reuter's Answer to Jax' Counterclaims, while denying many of Jax' allegations, does not characterize those counterclaims as defamatory or slanderous.  Reuter nevertheless contends that he "can show that dismissal would actually result in unfair treatment" because dismissal would further impair "his ability to discover pertinent information" and "because he will be prevented from defending his ownership" of the games "against false

10

claims." (Doc. No. 107, at 10, 11.)

But again, Jax' counterclaims, regardless of whether they are, as Reuter alleges, "false," will no longer exist once dismissed. If Jax, or some other person or entity, re-asserts such claims in the future, Reuter will be free to defend against them and any such opponent will have gained nothing by virtue of the fact that Jax had made similar allegations here. Speculation about what might happen in the future is no basis to permit one party to insist on the resolution of claims that the other party no longer wishes to pursue.

### B.     Reuter's Proposed Amended Complaint

Reuter insists that he "has been attempting to add claims since the beginning of the case." (Doc. No. 107, at 16.) But that assertion simply raises the question of why he did not include all of his claims in the original Complaint, or at least timely amend that Complaint "as a matter of course" under Rule 15(a)(1).

The Pretrial Scheduling Order required that all motions to amend the pleadings be filed by July 15, 2011. (Doc. No. 33.) Reuter filed a motion to amend on July 14, 2011. (Doc. No. 42). Thus, the liberal standard Rule 15(a)(2)–providing that "[t]he court should freely give leave when justice so requires"–would usually govern.

Although Reuter's July 14, 2011 motion satisfied the Pretrial Scheduling Order, the Amended Complaint he presently seeks leave to file is not the same for which he sought leave in July 2011. Nevertheless, Reuter argues that because his original July 2011 motion was timely, the Amended Complaint he presently seeks to file should also be

addressed under Rule 15's standard. (Doc. No. 99, at 2-3.)

The Court's review of the two proposed versions of the amended complaint reveals that the latest proposed version is meaningfully different from the first proposed version. The Court cannot permit Reuter to timely file what is, in effect, a placeholder motion to amend, only to then later submit–outside of the deadlines of the scheduling order–a different proposed Amended Complaint and yet claim it is still timely.[6] Accordingly, under these circumstances, the more demanding standard of Rule 16 governs, requiring a showing of good cause. Once the deadline for amending as provided in the Pretrial Scheduling Order has passed, a party seeking leave to amend must first demonstrate "good cause" to modify that order. Fed. R. Civ. P. 16(b). "Rule 16(b) imposes an exacting standard, under which a party must demonstrate that, despite the moving party's due diligence, it could not meet the deadline imposed by the Pretrial Order." Rosati v. Cleveland-Cliffs, Inc., 259 F. Supp. 2d 861, 875 (D. Minn. 2003).

Reuter claims he will be severely prejudiced if not allowed to pursue his additional claims because he would have to file a new complaint, which besides involving delay, would permit Jax to argue claim preclusion–that is, that Reuter should have brought all plausible claims in his original action. (Doc. No. 99, at 5.) Exactly so. And having relied entirely on the more liberal standard of Rule 15, Reuter has not attempted to articulate a "good cause" argument for failing to raise these claims in his original

---

[6] The Court thus deems Reuter to have abandoned the amended complaint he proposed in July 2011 in favor of the version he now proposes. The July 2011 motion (Doc. No. 47) is therefore denied as moot.

Complaint.[7]

Reuter's original Complaint included only two claims for declaratory judgment that he had cause to terminate the Agreement between the parties. Reuter alleged that he could terminate because (1) Jax, despite being prohibited from entering a sublicense that further permits secondary sublicenses, had entered into an agreement with Anjar, and Anjar then, in March 2003, entered into two agreements with others to sell the games in Europe, Australia and New Zealand (Doc. No. 1, ¶¶ 49, 51-52); and (2) Jax failed to inform Reuter about unauthorized sales by Wal-Mart in Canada (id. ¶¶ 65, 68-72.)

Reuter's present proposed Amended Complaint, in contrast, contains what Reuter structures as five claims–three different claims for breach of contract, a declaratory judgment claim, and one tort claim for conversion. Jax, however, argues that the present proposed Amended Complaint in fact amounts to ten claims, the "declaratory judgment*s*" claim being comprised of *six* separately-denominated sub-claims (*i.e.*, "Claim 4a" through

---

[7] The Court clarifies that it is denying Reuter's motion to amend *not* on the grounds of claim preclusion, or even, as Jax offers, on the basis of law of the case. Claim preclusion is not presently viable because there is no judgment. Although this court granted Jax's motion for summary judgment on both claims of Reuter's original Complaint, Jax's counterclaims remained and the Court did not direct entry of partial judgment on Reuter's claims. For similar reasons, the doctrine of law of the case does not strictly preclude Reuter's present claims on the basis of the summary judgment order. A court may revisit a prior ruling anytime before final judgment. Although this Court adheres to its September 6, 2011 ruling, the law-of-the-case doctrine does not therefore operate to preclude the presently proposed claims. Nevertheless, the same general principles that underlie these doctrines also inform the Court's Rule 16 analysis. If Reuter, when he filed the original Complaint, was aware of plausible claims in addition to those he actually included in that Complaint, the Court discerns no "good cause" for not having included them then, but rather having proposed them only after the Court granted Jax summary judgment on all of the claims actually asserted in the original Complaint.

"Claim 4f").

Reuter insists that his original complaint included only the two claims for declaratory judgment, both seeking to terminate the Agreement, because "[w]ith termination, it would not be necessary to address the numerous other issues." (Doc. No. 107, at 17 n.3.) But such a strategy–laying in the weeds and withholding some claims on the assumption that the party will prevail on the claims asserted–voluntarily, and unnecessarily, assumes the risk that the party may not prevail. The doctrine of claim preclusion is aimed directly at such piecemeal litigation strategies by requiring a litigant to assert all plausible claims known at the time in a single action to avoid costly and protracted litigation. And nothing prevents a party such as Reuter from pleading contingent claims in the original Complaint.

That Reuter did not timely include all known plausible claims when he filed his original Complaint on February 9, 2011, is evident from the amended complaint he now proposes. Claim 3, regarding sales to Wal-Mart, expressly alleges that "Reuter learned of sales to Walmart on or about February 18, 2010," almost a year before the original Complaint was filed. (Doc. No. 97, Ex. A, ¶ 52.) It also alleges that "Reuter questioned Jax about such sales on or about May 7, 2010," and provided "notice that Jax had thirty days to correct the situation" on October 13, 2010." (Id. ¶ 53.) Thus, Reuter could have asserted this claim in the original Complaint.

Likewise, Claim 4a, seeking a declaratory judgment regarding quality control rights, alleges that "[i]n September of 2010, Reuter raised the question of the quality of

[game] products to Jax," and that Jax's September 23, 2010 response "would not acknowledge that Reuter had the final control or that the 2006 quality [sic] set an objective standard for quality control." (Id. ¶¶ 67, 68.) Moreover, it alleges that "[o]n October 13, 2010, Reuter notified Jax that it was in default of the" Agreement by failing to make that acknowledgment, and that following Jax's failure to cure that default within thirty days, "[a] notice of termination was sent to Jax on or about February 9, 2011." (Id. ¶¶ 70, 71.) Again, Reuter had the factual basis to include this claim in his February 2011 Complaint.

The remaining claims of the proposed amended complaint also could have, and should have, been brought earlier, if not in the original complaint, then within the deadline for amending provided by the Pretrial Scheduling Order. Jax argues that four of the purportedly "'new' claims" are, in fact, "merely repackaged versions of Reuter's claims that were rejected in this Court's summary judgment ruling. (Doc. No. 112, at 8.) And Reuter, in an attempt to defend against Jax's argument that Reuter acted in bad faith or with a dilatory motive, states that "[t]he added claims are all related to the same core facts and transactions as his original claims." (Doc. No. 112, at 5.) On this basis, in conjunction with the fact that Reuter has made no attempt at satisfying the good cause standard of Rule 16, the Court denies Reuter's motion for lack of good cause.

An analysis of several of the claims Reuter now proposes to assert further illustrates the point. With respect to Claim 1, which alleges a breach of contract for Jax's failure to pay Reuter royalties for foreign sales conducted by two purported sublicensees,

Jax contends that any such claim is subsumed by the claims on which this Court already granted Jax summary judgment. (Doc. No. 112, at 18.) Claim 1 alleges that Jax failed to pay Reuter his share of the royalties for sales by two purported sublicensees who made foreign sales on behalf of Jax. (Doc. No. 97, Ex. A, ¶¶ 32-41.)

But the first claim of Reuter's original Complaint alleged that Reuter was entitled to terminate the Agreement because Jax breached that Agreement by entering into unauthorized sublicenses. The fact that that claim was one for declaratory judgment based on that alleged breach does not meaningfully differentiate it from Claim 1 of the currently proposed Amended Complaint, which is framed as one for breach of contract. And this Court granted Jax summary judgment on that declaratory judgment claim. (Doc. No. 83, at 4-9.) The Court concludes that the present Claim 1 is merely either a repackaging of the declaratory judgment claim or a somewhat different claim that nonetheless could have been asserted in the original Complaint.

With respect to Claim 3, the Court already has concluded that Reuter knew of the factual basis for that claim well before he filed his original Complaint. In any event, Jax argues that Claim 3 "is essentially identical to Count 2 of Reuter's original complaint," but simply frames the alleged breach in terms of Jax not having "'involve[d]' Reuter regarding the resolution of the Wal-Mart sales," as opposed to framing the claim, as Reuter did in the original Complaint, in terms of Jax not having "'advise[d]' Reuter of the Wal-Mart sales." (Doc. No. 112 at 19.) The Court agrees.

With respect to Claim 5, which alleges that Jax converted royalties for certain

sales, Jax first argues that it "is barred for the same reasons as Reuter's new claim 1." (Doc. No. 112, at 19.) Jax also contends that a tort claim for conversion does not lie where the parties relationship is governed by contract. (Id.) The Court agrees. E.g., Jones v. Western Union Fin. Servs., Inc., 513 F. Supp. 2d 1098, 1100-01 (D. Minn. 2007) (under Minnesota law, where contract governs relationship between the parties, one may not "'recover tort damages for a breach of contract, absent an 'exceptional case' where the breach of contract constitutes or is accompanied by an independent tort'").

With respect to "Claim 4," Reuter's multi-part claim for declaratory relief, Jax argues that this Court is not obligated to exercise its jurisdiction under the Declaratory Judgment Act. (Doc. No. 112, at 21.) As the Supreme Court explained long ago, the fact that a district court has jurisdiction under that Act does not compel it "to exercise that jurisdiction." Brillhart v. Excess Ins. Co. Of America, 316 U.S. 491, 494 (1942). "*Brillhart* makes clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). For all practical purposes, there is "'nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court' to hear a declaratory judgment action." Id. (quoting E. Borchard, Declaratory Judgments (2d ed. 1941) at 313). Jax thus contends that none of the sub-claims is ripe for a declaratory adjudication.

Again, an example is sufficient to illustrate Jax's point. With respect to Claim 4e, Reuter alleges a "dispute" regarding the current validity and effect of the 2005 temporary

restraining order, one which purportedly "affects decisions made and actions taken by the respective parties." (Doc. No. 97, Ex. A, ¶ 91.) But as Jax notes, it "is not contemplating and has not taken any affirmative action against Reuter based on the 2005 temporary restraining order." (Doc. No. 112, at 27.) Because Reuter's vague allegations only hint at some speculative dispute that could occur, Reuter has failed to allege the "'impending injury'" necessary to warrant declaratory judgment jurisdiction. Daum v. Planit Solutions, Inc., 619 F. Supp. 2d 652, 657 (D. Minn. 2009).[8]

Reuter further contends that he timely sought to add the other claims "[a]fter Jax made its unsubstantiated counterclaims demanding rescission." (Doc. No. 107, at 17 n.3.) But Jax asserted those counterclaims in its Answer that it filed on March 11, 2011. Although Reuter thus had several months to respond within the July 15, 2011 deadline, he did not propose the current Amended Complaint until October 25, 2011. Thus the Court cannot accept Reuter's claim that "Jax has been solely responsible for the delay in Reuter amending the complaint." (Id. at 18.)

Reuter contends "Jax has used motion practice to delay amendment and now is using that delay to prevent Reuter from amending the complaint." (Doc. No. 107, at 16.) Yet Reuter also notes that he "notified Jax of his intent to amend the complaint at the pretrial scheduling conference on June 1, 2011." (Id.) Yet despite that stated intent,

---

[8] Jax also argues that each of the sub-claims must be dismissed under Rule 12(b)(6) for failure to state claim. (Doc. No. 112, at 22.) Finally, Jax argues that, as the above analysis suggests, Reuter is guilty of undue delay, bad faith, and dilatory motives. (Doc. No. 112, at 27-29.) Although the Court does not necessarily disagree, it need not address these additional bases for denying Reuter's motion to amend.

Reuter had not yet filed any motion to amend a month later when Jax moved for summary judgment on July 1, 2011.

The Court thus denies Reuter's request to amend his Complaint. And, therefore, the Court also concludes that Jax may dismiss its counterclaims.

### C. Sanctions

This leaves Jax's motion for Rule 11 sanctions, filed on August 15, 2011, in response to Reuter's first motion to amend of July 14, 2011. But Jax now asserts that "[i]n the event Reuter's motion to amend is dismissed [sic], Jax will withdraw its motion for sanctions arising from Reuter's motion to amend." (Doc. No. 94, at 7, n.2.) Accordingly, Jax's motion for sanctions is now moot.

### D. Entry of Judgment

Finally, Jax has requested entry of judgment pursuant to Rule 58(d). In light of the resolution of all of the claims, counterclaims and motions, entry of judgment is now appropriate.

## III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Jax' motion for dismissal of its counterclaims [Doc. No. 92] is **GRANTED**;

2. Reuter's amended motion to amend the Complaint [Doc. No. 47] is **DENIED AS MOOT**;

3. Reuter's motion to lift the stay and for leave to amend the Complaint [Doc.

No. 97] is **DENIED**; and

    4.    Jax' motion for Rule 11 sanctions [Doc. No. 70] is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  February 28, 2012                  <u>s/ Susan Richard Nelson</u>
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge